(Hamilton County Probate Court.)

IN RE ESTATE OF GEORGE BURROWS, DECEASED.

---

The expressions of a man standing upon the verge of eternity, with the grave yawning before him, with every indication of dissolution, can not be said to be those of a man of sound mind and memory, and a will made under such conditions will not be admitted to probate.

It is the object of a last will that it shall be such a disposition of one's property, to take after death, as would be the result of deliberate judgment, of care and caution.

A testamentary disposition should indicate the wishes of a man absolutely free from pains that are incident to death, and rather than the testator's will made under such circumstances should be upheld, the law will make a new will for him.

---

FERRIS, J.

Section 5914, Revised Statutes, provides that

any person in full age, sound mind and memory and not under any restraint, having and owning property, personal or real, or any interest therein, may give and bequeath the same to any person by last will and testament lawfully executed.

A long line of decisions, some of which are not easily reconciled with others, have given us a clear light upon the subject of mental capacity required to make a last will and testament, and yet, I fancy that it would not be difficult to imagine a case where one laboring under insane delusions, a proper subject possibly for an asylum, having lucid intervals, would be determined to be a person of sound mind and memory within the meaning of this statute. Nor would it be difficult to find authority to support the conclusion that persons ordinarily considered sound in their judgment and mind, and having a disposing memory, had drawn a will under circumstances which the court after a full hearing had determined was invalid, was not a proper subject for probate, on the ground that the testator was not of sound mind and memory.

Between these two antipodal positions, the court is required to say in this and in other cases, what the meaning of the expression "a person of sound mind and memory" is, as applied to the case at bar.

As is proper, this case must stand or fall in accordance with the testimony. In this particular case, there were two subscribing witnesses to the will, both of whom were eminently respectable members of two learned professions, one of them a dentist and the other an attorney, and they were called upon to sign a last will and testament of a man aged seventy-four years.

Section 5914, Rev. Stat., provides that any person of full age, sound mind and memory and not under restraint, having and owning property, personal or real, or any interest therein, may give and bequeath the same to any person by last will and testament lawfully executed.

The will was drawn on Saturday, January 7, and within a few hours after the execution of the will, life was extinct.

The cross-examination, limited to the facts brought out in chief, showed that Dr. Hamilton had known the testator for a number of years, knew his idiosyncrasies or peculiarities, but regarded him, at the time of the making of the will, as of sound mind and memory. The doctor is a beneficiary under the codicil, which apppears to have been drawn at the time that the will was executed. Had it not been for possibly an oversight, the codicil would have been a part of the will. The explanation is perfectly satisfactory as to why

the codicil was drawn, and the court attaches no significance to the addendum or codicil, executed as it was.

The second witness, the attorney, was sent for or taken to the place by the party who is the executor under the will, one Francis Wentz. The attorney was unknown to both Mr. Wentz, the executor, and to the testator, Mr. Burrows. At the time that he saw the testator, he was in his last illness—the court had almost said, *in extremis*. The testator made known his wishes, which were faithfully transcribed. Whatever predicate there is to the testimony of the attorney who drew the will, finds its foundation limited to the few moments that he was in the presence of the man who died within a few hours after the drawing of the will. That fact, coupled with testimony—not as satisfactory as the court would like to have had it—induced the court to adopt the right of calling, on its own motion, a regularly practicing physician, Dr. Wintermute, who was present at or near the time of the drawing of the will, and who also had an acquaintance of some seven years with the testator himself; and this testimony reduced to writing, forms a part of the record in this case.

Who shall decide when doctors disagree? Dr. Hamilton's testimony, to the effect that the man was of sound mind and memory is met unequivocally by the statement of Dr. Wintermute that he was not a man of sound mind and memory, that his pulse was beating at the rate of more than one hundred. With such a temperature, suffering as he was with pneumonia, from which he died, refusing to take medicine, possibly as the result of some belief, finding an explanation in the thought that he would never die, and believing in an hallucination that his time had not come, under such circumstances this court is asked to believe that any deliverance that he would make would be the emanation of a sound mind.

I cannot so think. It would be a travesty upon the very theory upon which last wills and testaments are made, if the expressions of a man standing upon the verge of eternity, with the grave yawning before him, with every indication of dissolution, could be said to be those of a man of sound mind and memory.

It is not to be wondered at that he should have had difficulty in recalling the names of his nieces. It is not to be wondered at, that the controlling thought of the old man's life, the publication of his book, should have come to his mind at such a time as that. But how is it to be reconciled with the thought that he was familiar with the objects of his benevolence, that he knew his property, his property-

rights, and recognized those elements that enter into any judgment that is to be respected? And how can the situation and the description of his mental condition, as detailed by the witnesses, prepare one to make a valid last will and testament?

The very object, as this court understands the law relating to last wills and testaments, is that it shall be such a disposition of one's property, to take after death, as would be the result of deliberative judgment, of care, of caution; and that the elements of justice and the elements of right shall permeate it throughout. One may not do that which is a final message when death or dissolution is occurring.

Now, I have read this testimony and have taken it by the four corners, and have read the testimony of Dr. Hamilton and Dr. Wintermute. I believe those gentlemen. But the opportunity for a judgment that ought to induce this court to base a judgment upon Dr. Hamilton's testimony and the testimony of the other subscribing witnesses, did not come. They gave their best impressions; but, as against the testimony of Dr. Wintermute, in my judgment, a controlling effect should not be given to the testimony of a man who saw the testator but a few moments, or to one whose testimony might have been influenced by the consideration of the fact that he was a devisee.

I prefer, therefore, to subscribe to the doctrine that the law makes for one a will, rather than that the testator should have made, under those circumstances, a testamentary disposition that should indicate the wishes of a man absolutely free from pains that are incident to death.

Having studied somewhat, for the purposes of this case, the effect of the disease of which this man died, I find that the authorities do not differ in stating that the disease has an immediate action upon the brain cells entirely inconsistent with consecutive thought.

This will ought not to be admitted to probate.